[No. B204911. Second Dist., Div. Three. Sept. 3, 2009.]

CARLA BECERRA CARRERA et al., Plaintiffs and Appellants, v.
MAURICE J. SOPP & SON, Defendant and Respondent.

JOSE TRINIDAD DURANGO et al., Plaintiffs and Appellants, v.
MAURICE J. SOPP & SON, Defendant and Respondent.

ROBERTO REYES, Plaintiff and Appellant, v.
MAURICE J. SOPP & SON, Defendant and Respondent.

## COUNSEL

Moreno, Becerra & Casillas, Arnoldo Casillas and Christian Pereira for Plaintiffs and Appellants Carla F. Becerra Carrera, Daniel I. Dorantes Carrera, Victor I. Becerra, Maria G. Becerra Carrera, Reina A. Becerra Carrera, Ana R. Becerra Carrera, Juan C. Becerra Carrera, Ruperto Dorantes, Victoria Jimenez, Jovani J. Mata Rios and Margarita Ruiz.

Blanchard Stein & Stein, Andrew D. Stein & Associates, Andrew D. Stein and Rebecca A. Davis-Stein for Plaintiffs and Appellants Jose Trinidad Durango and Amalia Bernabe Loma.

Law Office of Daniel Michah Dembicer and Daniel Michah Dembicer for Plaintiff and Appellant Roberto Reyes.

Horvitz & Levy, David S. Ettinger, Jason R. Litt; Schaffer, Lax, McNaughton & Chen, Kevin J. McNaughton and Yaron F. Dunkel for Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—The plaintiffs and appellants in this consolidated action appeal a judgment following a grant of summary judgment in favor of defendant and respondent Maurice J. Sopp & Son, a California corporation (Sopp). Plaintiffs assert causes of action for wrongful death, negligence and loss of consortium against Sopp. The deaths and injuries giving rise to this suit were caused by one Raymond Bermudez, a paroled gang member who stole a tow truck, parked with the key in the ignition, from Sopp's open premises.

Absent "special circumstances," the owner or bailee of a motor vehicle has no duty to protect third persons against the possibility a thief will steal the vehicle and injure them with it. (*Richards v. Stanley* (1954) 43 Cal.2d 60, 65–66 [271 P.2d 23] (*Richards*); *Richardson v. Ham* (1955) 44 Cal.2d 772, 775–777 [285 P.2d 269] (*Richardson*); *Hergenrether v. East* (1964) 61 Cal.2d 440, 445–446 [39 Cal.Rptr. 4, 393 P.2d 164] (*Hergenrether*); *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183–186 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*); *Ballard v. Uribe* (1986) 41 Cal.3d 564, 573 [224 Cal.Rptr. 664, 715 P.2d 624] (*Ballard*); *Avis Rent a Car System, Inc. v. Superior Court* (1993) 12 Cal.App.4th 221, 225 [15 Cal.Rptr.2d 711] (*Avis*); *May v. Nine Plus Properties, Inc.* (2006) 143 Cal.App.4th 1538, 1541 [50 Cal.Rptr.3d 13].) "The Supreme Court cases show that *'special circumstances' exist when heavy vehicles are left unattended and available for use by those not accustomed to driving them.*" (*Avis, supra*, at p. 228, italics added.)

The essential question presented is whether special circumstances exist in the instant case, so as to give rise to a duty in Sopp.

Here, Bermudez, who was released on parole on the day of the incident, took a bus to Los Angeles, becoming intoxicated en route. Bermudez entered Sopp's truck service center yard in Huntington Park, California, through an open gate and stole the commercial tow truck in issue. Bermudez started the tow truck with the key, which had been left in the ignition, and drove the tow truck out of the service center yard. Bermudez struck numerous vehicles parked along the street as he drove from the service center. Approximately a mile from there, Bermudez drove the tow truck through a bus stop crowded with people, killing three and injuring numerous others, finally stopping after hitting two utility poles.

Sopp sought summary judgment on the issues of duty and causation. The trial court indicated at the hearing on the motion that it had "struggled" with the case but thereafter, in a written order, granted summary judgment on the issue of duty, finding the case fell within the general rule of nonliability in the absence of special circumstances.

On appeal, plaintiffs contend Sopp was not entitled to the benefit of the general rule of nonliability because special circumstances exist in this case. We agree and reverse the order granting summary judgment.

We reach this conclusion based on evidence (1) the tow truck stolen from Sopp's service center was a powerful vehicle capable of inflicting more

serious injury and damage than an ordinary vehicle when not properly controlled and the safe operation of the tow truck was not a matter of common experience; and (2) the tow truck was unattended and accessible to thieves within the meaning of the special circumstances doctrine. The theft occurred at the end of the business day. As the trial court found, Sopp's "security measures or shutdown procedures were either not in place or not followed," even though, at the relevant time, Huntington Park had the highest rate of vehicle theft in the nation. The sole Sopp employee in the vicinity of the tow truck was operating loud carwash equipment and was unaware of the theft.

In view of plaintiffs' showing with respect to the powerful nature of the instant vehicle and that its safe operation was not a matter of common experience, coupled with the fact the vehicle, with key in the ignition, was left unattended, the trial court erred in finding an absence of special circumstances. On the record presented, Sopp failed to carry its burden on summary judgment to show it owed no duty to secure the vehicle by undertaking minimally burdensome measures such as removing the key from the ignition and/or closing the gate to the premises. (See *Hergenrether, supra*, 61 Cal.2d at p. 445; *Palma, supra*, 36 Cal.3d at p. 185.)

We also reject Sopp's claim that, as a matter of law, plaintiffs cannot demonstrate causation. Where the risk to be foreseen is criminal conduct by a third party, such criminal conduct cannot cut off the defendant's liability as a matter of law. (*Richardson, supra*, 44 Cal.2d at p. 776.) Further, the injuries caused by Bermudez occurred shortly after the theft of the tow truck and were not so temporally disparate as to suggest a termination of causation. (Cf. *Avis, supra*, 12 Cal.App.4th 221 [injury occurred one week after theft]; *May v. Nine Plus Properties, Inc., supra*, 143 Cal.App.4th 1538 [injury occurred two days after theft].)

In sum, we conclude Sopp owed a duty of care, as a matter of law. Whether Sopp breached its duty, as well as the issue of causation, are matters that must be determined by the trier of fact.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The pleadings.*

    a. *The complaints.*

Plaintiffs' complaints alleged Sopp owned and operated a commercial vehicle repair facility on 58th Street in the City of Huntington Park, California, as part of a larger commercial vehicle sales and maintenance

complex, located in an area with a high transient population, numerous bars, graffiti indicative of gang activity and a very high incidence of crime, including thefts and burglaries. The vehicles repaired at the facility include commercial tow trucks, moving trucks and vans, commercial cargo trucks and other similar large motor vehicles, which require specialized knowledge and training for their operation. "The commercial vehicles in the central storage area were stored with the keys in the ignition so as to allow easy movement of the vehicles . . . as necessary for repairs and service."

On October 6, 2005, Sopp "received a 2003 Nissan tow truck in the subject repair facility for servicing and/or repair. The tow truck was a large commercial vehicle . . . . Because of its size, heavy weight and the complex nature of its controls, it was capable of inflicting serious injury or damage if operated in the roadway and not properly controlled." "Defendants placed the tow truck in the subject facility's central storage area and the keys to the tow truck were left in the ignition and the vehicle was not locked or otherwise secured so as to prevent its theft." The service center has gated entrances on its eastern and northern sides. The eastern gates face an alley that abuts a major intersection, which is heavily traveled by pedestrians.

Bermudez entered the open facility through the east alley entrance, started the tow truck with the key and drove the truck out the eastern gate. The complaints alleged the "tow truck was parked in a position that permitted [Bermudez] to easily leave the facility." Bermudez "proceeded to the intersection of Vernon Avenue and Santa Fe Avenue in the City of Vernon, striking other motorists' vehicles as he drove. Because of the large size of the vehicle and [the] complex nature of the controls on the tow truck, [Bermudez] struggled to operate the vehicle." Bermudez drove onto the sidewalk at the intersection and collided with numerous people waiting to board a bus, causing the deaths and injuries that gave rise to this litigation.

The complaints alleged Sopp negligently operated the truck service center so as to allow a thief access to the tow truck and, because of the special circumstances that existed in the service center repair yard on the date of this incident, Sopp had a duty to take reasonable measures to prevent the theft. However, Sopp failed in this regard and, as a proximate result of this failure, plaintiffs were injured or their decedents were killed.

b. *Sopp's answers.*

Sopp's answers, as relevant, asserted plaintiffs failed to state facts sufficient to constitute a cause of action and the injuries and damages claimed by

plaintiffs were caused by the negligence or other actionable conduct of third parties for whom Sopp was not responsible.

### 2. Proceedings related to the motion for summary judgment.

#### a. Sopp's motion for summary judgment.

Sopp filed a motion for summary judgment, which alleged plaintiffs could not establish the elements of duty or causation. In support of the motion, Sopp offered declarations of Sopp employees, which indicated the truck service center operates from 8:00 a.m. until 5:00 p.m. daily. Vehicles for service are parked throughout the service center. Vehicle porters close all the lots owned by Sopp, including the service center, as part of the shutdown routine. The porters move all vehicles from the street, "stack park" the vehicles to fit inside the premises, remove the keys from the vehicles and lock them in the office.

In a declaration in support of the motion, Roy Jones, Sopp's get ready manager, detailed the activity depicted in a video captured by three of Sopp's surveillance cameras. The video shows that, after the porters closed and locked the eastern gates to the service center, Jones unlocked the eastern gate at 5:12 p.m., then drove his personal vehicle into the service center and parked it next to a carwash bay. Jones left the gate open and, while Jones washed his vehicle, Bermudez walked into the service center yard through the open gate at 5:15 p.m.

The video shows Bermudez immediately entered the driver's seat of a service truck parked near the gate. Bermudez then alighted from the service truck and reached under the seat, presumably looking for the key. Bermudez then walked to the tow truck, which was parked in a second row of vehicles. The tow truck moved almost immediately after Bermudez entered it. Twice the tow truck backed into a Chevy Silverado pickup truck parked behind it. The tow truck then went forward, around a stake bed truck and out the open gate. As the tow truck moved forward, it knocked down and dragged a large shade canopy with it.[1] The entire incident took approximately three minutes. Bermudez started the tow truck one minute four seconds after he entered the yard.

Bermudez drove the tow truck past two service center employees standing on 58th Street near the north gate. The tow truck struck parked vehicles as it went down 58th Street and struck a vehicle being operated by a Sopp

---

[1] We include as exhibit A to this opinion a "frame grab" taken from the video of the theft which depicts the tow truck dragging the canopy as it leaves the service center.

employee on 58th Street. Approximately one mile from the service center, Bermudez drove the tow truck through a group of pedestrians at a bus stop at the corner of Santa Fe and Vernon Avenues in the City of Vernon. The tow truck then sheared off a utility pole and finally stopped when it struck a second utility pole.

Bermudez pled guilty to three counts of murder and was sentenced to 140 years to life in state prison.

Jones declared that, in his 31 years as a Sopp employee, no vehicles had ever been stolen from the service center. Although a tilt cab truck was stolen in 1993 from a nearby lot owned by Sopp, that theft occurred at night after Sopp employees had left for the day.

Sopp's motion asserted it owed plaintiffs no duty because two Chevy Silverado pickup trucks had been "stack parked" behind the tow truck, a 20-foot stake bed truck was parked to the side of the tow truck and the tow truck was stolen from a fenced and gated yard during daylight hours while Sopp's employees remained on the premises. Further, Bermudez was able to drive the tow truck from the service center only "by repeatedly smashing the vehicles on either side of [the tow truck] and driving through the canopy and out the gate into the street."

Sopp also asserted the tow truck did not constitute heavy equipment and noted its employees had stated, at deposition or in a declaration, the tow truck drove no differently than an ordinary pickup truck.

Sopp contended that, as a matter of law, no special circumstances justified imposition of a duty on Sopp to prevent the theft. The theft was unprecedented and unforeseeable. Sopp also claimed Bermudez's intentional and wanton misconduct in causing multiple vehicle collisions and continuing to drive until he struck plaintiffs and their decedents constituted "a superseding and intervening cause that cuts off any liability by Sopp."

### b. *Plaintiffs' opposition.*

In opposing the motion for summary judgment, plaintiffs offered, inter alia, the declaration of Paul Herbert, an expert in the operation of commercial vehicles. Herbert indicated the tow truck at issue is a wheel-lift-type truck equipped with a yoke apparatus that lifts the front or rear wheels of a vehicle off the ground. Herbert noted a tow truck has specialized equipment such as an air over hydraulic braking system, power takeoff driven hydraulic pumps,

multiple valves and specialized controls, all of which require special training and skills. Herbert concluded that, due to the size of the tow truck, its specialized equipment and the specialized training it required, the safe and proper operation of a tow truck is not a matter of common experience.

Plaintiffs also offered the declaration of E. Dwayne Tatalovich, an expert in risk assessment and security. Tatalovich indicated the City of Huntington Park had the highest rate of car thefts in the nation in 2004. Also, the city ranked in the top 14th percentile in the nation for violent crime. Tatalovich opined Sopp could have prevented the injuries to plaintiffs by preventing Bermudez from entering the yard or by removing the keys from the tow truck.

Plaintiffs also presented evidence indicating Sopp executives knew there was a gang problem in the City of Huntington Park at the time of the theft. Further, in the five years prior to the theft of the tow truck, the police had been called to the service center on 25 occasions and Sopp's employees had reported several thefts and break-ins.

### c. *Plaintiffs' request for discovery sanctions.*

In addition to opposing the motion for summary judgment, plaintiffs filed a motion for discovery sanctions and to redepose Jones and other Sopp employees based on the assertedly late production of the "long version" of the security video referenced by Jones in his declaration in support of the motion for summary judgment. Plaintiffs asserted Sopp previously had represented that only a four-minute video of the actual theft of the tow truck existed.

### 3. *The hearing on the motion and the trial court's ruling.*

The trial court issued a tentative decision prior to the hearing on Sopp's motion. At the close of the hearing, the trial court indicated it would continue to reflect before issuing a written decision. Thereafter, in granting summary judgment, the trial court stated that, even if the safe operation of a tow truck is not within common experience, "that factor is not enough to create a duty since the thief did not attempt to use the towing equipment, but was driving the truck as an ordinary vehicle."

The trial court noted the tow truck was parked behind a stake bed truck and next to a canopy, and two pickup trucks were parked immediately behind the tow truck. The trial court concluded the "parking configuration required Bermudez to remove the tow truck by ramming vehicles on either side of it and driving through the canopy." The trial court concluded the tow truck

"was not left unattended [or] in a place that invited incompetent drivers to use the truck."

The trial court further found the evidence submitted by plaintiffs showed Sopp's "security measures or shutdown procedures were either not in place or not followed." However, "the lack of such security is more relevant to the issue of breach, and not particularly probative to the issue of duty in light of the lack of prior similar incidents."

The trial court concluded "leaving the keys in the tow truck which was parked in defendant's own, fenced-in lot, during daylight hours when employees were present, does not constitute the 'special circumstances' necessary to impose on defendant a duty to protect third parties from the negligent driving of a thief where the thief made extraordinary efforts to move the truck, and where he unsuccessfully attempted to steal a different vehicle immediately prior to targeting the [tow] truck."

In light of this ruling, the trial court found plaintiffs' motion to compel subsequent depositions moot, denied plaintiffs' request for sanctions and entered judgment in favor of Sopp.

Plaintiffs filed timely notices of appeal.

## CONTENTIONS

Plaintiffs contend the trial court misapplied the special circumstances doctrine in granting summary judgment in favor of Sopp, and abused its discretion in reaching the merits of the summary judgment motion without first addressing plaintiffs' motion for discovery sanctions.

## DISCUSSION

1. *General principles.*

   a. *Rules applicable to summary judgment motions.*

Summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) When the defendant is the moving party, it has the burden of demonstrating that one or more elements of the plaintiff's cause of action cannot be established, or by establishing a complete defense to the cause of

action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Once the moving defendant has met its initial burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action or a defense thereto. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)

"Because a summary judgment denies the adversary party a trial, it should be granted with caution. [Citation.] Declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party." (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1024 [68 Cal.Rptr.3d 897].)

" 'If any triable issue of fact exists, it is error for the trial court to grant a party's motion for summary judgment.' [Citation.]" (*Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 830 [20 Cal.Rptr.2d 296]; see *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 838–839 [89 Cal.Rptr.2d 540].)

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 860.) We independently review the record and apply the same rules and standards as the trial court. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]; *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 [68 Cal.Rptr.2d 571]; *Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

     b.   *Elements of negligence; the element of duty is a question of law for the court.*

■ The elements of a negligence action are duty, breach of duty, causation, and damages. (*Paz v. State of California* (2000) 22 Cal.4th 550, 559 [93 Cal.Rptr.2d 703, 994 P.2d 975]; *Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 752 [73 Cal.Rptr.3d 114]; *Friedman v. Merck & Co.* (2003) 107 Cal.App.4th 454, 463 [131 Cal.Rptr.2d 885].) ■ The existence of a duty is a question of law for the court. (*Ballard, supra*, 41 Cal.3d at p. 572, fn. 6.)

■ " 'Duty' is merely a conclusory expression used when the sum total of policy considerations lead a court to say that the particular plaintiff is entitled to protection. [Citation.]" (*Armato v. Baden* (1999) 71 Cal.App.4th 885, 893 [84 Cal.Rptr.2d 294].) Under *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], policy considerations involved in determining whether a defendant owes a plaintiff a duty to use reasonable

care include *"the foreseeability of harm to the plaintiff,* the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Id.* at p. 113, italics added.)

■ Foreseeability, when analyzed to determine the existence or scope of a duty, is a question of law for the court. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 678 [25 Cal.Rptr.2d 137, 863 P.2d 207].) As explained in *Ballard, supra,* 41 Cal.3d at pages 572–573, footnote 6, "Some confusion has arisen over the respective roles played by the court and the jury in determining liability in the *Richards* v. *Stanley, Richardson,* and *Hergenrether* context. The confusion may stem, at least in part, from the fact that the 'foreseeability' concept plays a variety of roles in tort doctrine generally; in some contexts it is a question of fact for the jury, whereas in other contexts it is part of the calculus to which a court looks in defining the boundaries of 'duty.' [¶] The question of 'duty' is decided by the court, not the jury. [Citations.] . . . The foreseeability of a particular kind of harm plays a very significant role in this calculus [citation], but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party."[2]

    c.   *Evolution of the special circumstances doctrine; departure from general rule of nonliability when special circumstances exist.*

■ As previously noted, absent special circumstances, California courts consistently have refused to impose a duty on owners or bailees of automobiles or ordinary pickup trucks who leave the key in the ignition of an unattended vehicle to prevent harm to third parties caused by a thief. (*May v. Nine Plus Properties, Inc., supra,* 143 Cal.App.4th at p. 1556 [ordinary pickup truck]; *Avis, supra,* 12 Cal.App.4th at p. 232 [rental cars].)

---

[2] *Ballard* added, "The jury, by contrast, considers 'foreseeability' in two more focused, fact-specific settings. First, the jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place. Second, foreseeability may be relevant to the jury's determination of whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury." (*Ballard, supra,* 41 Cal.3d at p. 573, fn. 6.)

The first decision to address the issue of duty in key-in-the-ignition cases was *Richards, supra,* 43 Cal.2d 60. (*May v. Nine Plus Properties, Inc., supra,* 143 Cal.App.4th at p. 1544.) In *Richards,* the defendant left her car parked on a street in San Francisco, unlocked and unattended, with the key in the ignition. The car was stolen and, while being driven by the thief, collided with a motorcycle driven by the plaintiff. He sued the owner for negligence, alleging her carelessness had induced the thief to take the car in the first place. (*Richards, supra,* 43 Cal.2d at pp. 61–62.) The Supreme Court affirmed a judgment of nonsuit, reiterating: "[I]t has generally been held that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it." (*Id.* at p. 63.)

In applying the general rule of nonliability, *Richards* noted the defendant did not leave the automobile in front of a school where irresponsible children might reasonably be expected to tamper with it "nor did she leave it in charge of an intoxicated passenger . . . . By leaving the key in her car she at most increased the risk that it might be stolen." (*Richards, supra,* 43 Cal.2d at p. 66.) *Richards* concluded the duty to exercise reasonable care in the management of an automobile "did not encompass a duty to protect plaintiff from the negligent driving of a thief." (*Ibid.*)

The following year, in *Richardson, supra,* 44 Cal.2d 772, the high court imposed liability based on the special circumstances presented in the defendant's failure to secure heavy machinery, specifically, a 26-ton bulldozer. The defendant in *Richardson* parked the bulldozer on top of a mesa. The defendant improvised a lock for the bulldozer, but it was ineffective in preventing intoxicated youths from starting the bulldozer in gear and driving it for 15 to 30 minutes before they abandoned it in motion. The bulldozer went off the edge of the mesa and caused property damage and personal injury. (*Id.* at pp. 774–775.)

*Richardson* noted the risk of danger from a bulldozer was "enormous," both because of its weight and power and because it can be expected that a thief would not know how to operate it. (*Richardson, supra,* 44 Cal.2d at p. 776.) *Richardson* concluded: "The extreme danger created by a bulldozer in uncontrolled motion and the foreseeable risk of intermeddling fully justify imposing a duty on the owner to exercise reasonable care to protect third parties from injuries arising from its operation by intermeddlers." (*Ibid.*) *Richardson* concluded the duty owed by the defendant included a duty to protect the plaintiffs from intentional misconduct and such misconduct did not constitute a superseding cause of the plaintiffs' harm.

Special circumstances also were found in *Ballard, supra*, 41 Cal.3d 564. In that case, the plaintiff was injured while using an "aerial manlift" with a broken stabilizing cable which had been left at a construction site with the keys in the truck and without a posted warning. *Ballard* noted "the significant danger posed by the unauthorized use of *heavy construction machinery* warrants recognition of a duty on the part of machinery owners to use due care to prevent the injurious misuse of the machinery by others." (*Id.* at p. 573, italics added.)

The special circumstances doctrine also has been applied to trucks. In *Hergenrether, supra*, 61 Cal.2d 440, employees of a roofing contractor parked the defendant's two-ton truck on the street with the key in the ignition and the doors unlocked. They left guns and a barrel of gasoline in the bed of the truck. (*Id.* at p. 442.) The truck was parked in a neighborhood that was populated by "drunks and near drunks" and which was "frequented by persons who had little respect for the law . . . ." (*Id.* at p. 445.) The truck was stolen during the night and, the next morning, the thief collided with the plaintiff's vehicle causing injury.

■ *Hergenrether* observed that "*each case must be considered on its own facts to determine whether the joint effect of them in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk.*" (*Hergenrether, supra*, 61 Cal.2d at p. 445, italics added.)

*Hergenrether* found the truck had been made easily available to persons who were known or should have been known to the defendants to be intoxicated. Also, although the truck, a partially loaded two-ton truck, did not have the same potential for doing harm as a bulldozer, "nevertheless it possessed unusual potentiality." (*Hergenrether, supra*, 61 Cal.2d at p. 445.)

A truck also was at issue in *Palma, supra*, 36 Cal.3d 171. There, a former employee of the defendant stole the defendant's flatbed truck from an unfenced lot in front of the defendant's property, which was located in a high-crime industrial area. (*Id.* at pp. 184, 186.) The door and window of the truck were open and the keys were in the glove compartment. (*Id.* at p. 184.) The thief drove the truck to a location where injury to the plaintiff occurred. (*Id.* at p. 176.)

■ Guided by the similar fact situation in *Hergenrether*, the Supreme Court in *Palma* found "a foreseeable risk of harm was posed by the truck left with its keys in the ignition or cab warranting imposition of a duty on the owner or operator to refrain from exposing third persons to the risk." (*Palma,*

*supra*, 36 Cal.3d at p. 185.) *Palma* reiterated, "The 'special circumstance' to which we look in determining whether the owner operator of a vehicle owes a duty to third parties in the manner in which the vehicle is secured when not in use *is nothing more than a test of foreseeability of harm.*" (*Id.* at p. 186, italics added, citing *Rowland v. Christian, supra*, 69 Cal.2d at p. 113.)

■ Thus, the four cases in which the Supreme Court found special circumstances to exist—*Richardson* (bulldozer), *Hergenrether* (two-ton truck), *Palma* (flatbed truck), and *Ballard* (aerial manlift), all involved sizable vehicles "left unattended and available for use by persons unfamiliar with their operation." (*May v. Nine Plus Properties, Inc., supra*, 143 Cal.App.4th at p. 1549.)

With these principles in mind, we turn to the case at hand.

2. *Application of the special circumstances doctrine to the instant case.*

a. *The stolen tow truck is a special circumstances vehicle.*

■ As can be seen from the foregoing discussion, the threshold issue in determining whether special circumstances exist is *the nature of the vehicle at issue.* Therefore, our initial task is to determine whether the instant tow truck falls within the ambit of the special circumstances rule. We conclude it does.

A tow truck, like a two-ton truck or a flatbed truck, is a sizable, powerful vehicle. It is designed to move other vehicles. Further, plaintiffs' evidence, offered in the form of an expert opinion, indicated a tow truck has specialized equipment such as an air-over-hydraulic braking system, power-takeoff-driven hydraulic pumps, multiple valves and specialized controls, all of which require special training and skills. Also, because of the size of the tow truck and the specialized equipment on board, "the safe operation of a tow truck is not a matter of common experience."

We additionally note the tow truck appears to be heavily loaded with equipment associated with the yoke and the towing apparatus, and the tow truck is equipped with dual rear wheels. Based on this evidence, we readily conclude the safe operation of such a vehicle is not within the common driving experience.

Sopp disputes this assertion on numerous grounds. First, Sopp notes one of its employees testified at deposition and another stated in a declaration that a tow truck of the type involved in this case drives no differently than a pickup truck. However, the driving experience of employees of a truck service center

is not reflective of the common experience. Further, neither of these lay opinions is entitled to the weight accorded the opinion of an expert.

Sopp also relies on the trial court's finding Bermudez drove the tow truck as an ordinary vehicle and did not attempt to use the towing equipment. However, the fact Bermudez did not utilize the towing capacity of the truck does not diminish its great capacity for inflicting harm. Further, the opinion of plaintiffs' expert, as well as Bermudez's apparent difficulty in maneuvering the vehicle, indicate the safe operation of the tow truck was outside the common experience.

It can readily be inferred from the collisions Bermudez caused in the service center yard and while operating the tow truck on the street that he struggled to operate and control the vehicle. Bermudez twice backed into a pickup truck parked behind the tow truck, then drove the tow truck forward and out of the yard. Although the parties interpret Bermudez's initial operation of the tow truck as an attempt to push the pickup trucks parked behind the tow truck backwards to make room for the tow truck to move forward, another reasonable inference to be drawn is that Bermudez had difficulty with the controls of the vehicle from the outset.

Thereafter, as Bermudez proceeded north on 58th Street, the tow truck struck numerous vehicles parked along the curb and collided with a Sopp employee who was driving his personal vehicle. When Bermudez reached the intersection where he caused the deaths and injuries, the tow truck struck a clearly visible crowd of people, destroyed the bus stop structure, broke through one utility pole and almost broke through another before stopping. These facts support the inference the tow truck was more difficult to operate than an automobile or an ordinary pickup truck and that it had far greater potential for harm.

Sopp also argues the tow truck does not qualify as a special circumstances vehicle because it can be driven, as opposed to operated as a tow truck, with only a regular class "C" driver's license and a tow truck does not meet the Vehicle Code's definition of a " '[c]ommercial motor vehicle.' " (Veh. Code, § 15210, subd. (b)(1).) However, the same could have been said of the two-ton truck in *Hergenrether* or the flatbed truck in *Palma*.

In sum, none of Sopp's argument dissuades us from the conclusion the tow truck at issue is the type of vehicle that implicates the special circumstances doctrine.

b. *The tow truck was left unattended in a high crime area, with the key in the ignition and accessible to thieves.*

As has been noted, the special circumstances doctrine arises where the totality of the circumstances "justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk." (*Hergenrether, supra,* 61 Cal.2d at p. 445.)

In evaluating the circumstances of this case, including the criminal environment, its similarity to *Hergenrether* and *Palma* cannot be overlooked. (*Hergenrether, supra,* 61 Cal.2d at p. 445; *Palma, supra,* 36 Cal.3d at p. 184.) Here, plaintiffs' evidence indicated the City of Huntington Park had the highest rate of vehicle theft in the nation in 2004 and it ranked in the top 14th percentile in violent crime. Further, plaintiffs showed Sopp executives knew there was a gang problem in the City of Huntington Park and the police had been called to the premises on at least 25 different occasions in the preceding five years.

Nonetheless, the yard's gate was open and the tow truck was left with the keys in the ignition. The vehicle was in a position that permitted Bermudez to drive it out of the yard. Sopp argues the tow truck was boxed in by the pickup trucks that assertedly were "stack parked" behind it. However, review of the video of the theft of the tow truck indicates that, after Bermudez gained some control of the vehicle, he was able to drive it forward, around the stake bed truck and out of the service center yard in about a minute. Thus, contrary to Sopp's argument, the evidence permits the reasonable inference that no meaningful physical barriers prevented Bermudez from driving the truck off the premises.

Further, at the time of the theft, minimal Sopp personnel were on the premises and no Sopp personnel were in sight. With respect to the Sopp employees who remained at the scene, one of these employees opened the gate, was operating loud carwash equipment, and was preoccupied with washing his own car, at the time of the theft. The others were standing on 58th Street north of the service center when the tow truck drove past them. Plainly, the presence of these employees did not deter Bermudez from the theft. Indeed, as the trial court found, Sopp's "security measures or shutdown procedures were either not in place or not followed."

In sum, the tow truck was accessible to thieves in that it was parked in an area plagued by vehicle thefts, with the key in the ignition, in a position that permitted Bermudez to leave the facility through the unlocked and open gate.

The totality of the circumstances "justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of [the] vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk." (*Hergenrether, supra*, 61 Cal.2d at p. 445; accord, *Palma, supra*, 36 Cal.3d at p. 184.)

### c. *Policy considerations.*

Finally, we consider the *Rowland* factors in determining whether imposition of a duty to prevent harm to third parties is appropriate in this case. (*Rowland v. Christian, supra*, 69 Cal.2d at p. 113.) The first three of these factors, foreseeability of harm, degree of certainty that a plaintiff will suffer injury and the closeness of the connection between the defendant's conduct and the injury suffered, all are tied to the great potential for harm presented by the unsafe operation of a powerful vehicle such as a commercial tow truck.

Although as to Sopp (unlike Bermudez) the element of moral blame may be lacking, there clearly is a strong public policy of preventing future harm of the type that occurred here. Requiring Sopp to lock its gate or to remove keys from commercial vehicles does not constitute an onerous burden on a business owner. Lastly, insurance coverage for claims arising from employee negligence is common and commercially available. The sum total of these policy considerations leads us to conclude Sopp owed a duty of care to plaintiffs herein. (*Rowland v. Christian, supra*, 69 Cal.2d at p. 113.)

In sum, because special circumstances were present in the instant fact situation, the trial court erred in granting summary judgment for Sopp on the issue of duty.

### 3. *Causation.*

■ The trial court did not reach the issue of whether Bermudez's conduct was an intervening or superseding cause of the harm to plaintiffs because it found Sopp owed plaintiffs no duty. Because we reach the opposite conclusion, we briefly address the issue of causation.

As observed in *Richardson*, when a defendant owes a duty to protect third parties from injuries caused by the intentional misconduct of a thief, such misconduct does not constitute a superseding cause of harm. (*Richardson, supra*, 44 Cal.2d at p. 777; see also *Palma, supra*, 36 Cal.3d at pp. 183–184; *Hergenrether, supra*, 61 Cal.2d at pp. 445–446.) Thus, where the risk created exposes the plaintiff to danger from criminal conduct, criminal conduct is not

automatically a superseding cause. (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1848–1849 [20 Cal.Rptr.2d 913].)

Additionally, the connection between Sopp's acts or omissions and the injury to plaintiffs was close in time, occurring within minutes of the theft. (Cf. *Avis, supra,* 12 Cal.App.4th 221 [injury occurred one week after theft]; *May v. Nine Plus Properties, Inc., supra,* 143 Cal.App.4th 1538 [injury occurred two days after theft].) Based on the close temporal connection between the theft and the harm to plaintiffs, we are unable to conclude Sopp, as a matter of law, was not a legal cause of the harm.

## CONCLUSION

Plaintiffs showed the tow truck stolen from Sopp's service center was a powerful vehicle capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled and that the safe operation of the tow truck was not a matter of common experience, so as to implicate the special circumstances doctrine.

Plaintiffs further showed the tow truck was left unattended and accessible to thieves within the meaning of the special circumstances doctrine. The theft occurred at closing time. As the trial court found, Sopp's "security measures or shutdown procedures were either not in place or not followed," despite Huntington Park's status as the nation's leader in vehicle thefts. The sole Sopp employee in the vicinity of the tow truck was operating loud carwash equipment, preoccupied with washing his own car, and was unaware of the theft.

In view of plaintiffs' showing with respect to the powerful nature of the instant vehicle and that its safe operation was not a matter of common experience, coupled with the fact the vehicle, with key in the ignition, was left unattended, the trial court erred in finding an absence of special circumstances and in concluding no duty was owed.

We also reject Sopp's claim that, as a matter of law, plaintiffs cannot demonstrate causation. There was a strong temporal connection between the claimed breach and the loss suffered by plaintiffs and, where a defendant exposes a plaintiff to the risk of criminal conduct, such criminal conduct does not, as a matter of law, constitute a superseding cause.[3]

---

[3] In light of its summary judgment ruling, the trial court found plaintiffs' motion to compel subsequent depositions moot and denied their request for discovery sanctions. Having resolved the summary judgment issue in favor of plaintiffs, we decline to address in the first instance the merits of their motions for evidentiary sanctions and for additional discovery. We make this

## DISPOSITION

The judgment is reversed. Plaintiffs shall receive their costs on appeal.

Croskey, J., and Aldrich, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 19, 2009, S177097.

---

ruling without prejudice to any further motion plaintiffs may prosecute based on Sopp's alleged discovery violations in failing to produce the long video in a timely manner.