Order; Concurrence by Judge GRABER; Dissent by Judge PREGERSON.
ORDER
Pursuant to Rule 8.548 of the California Rules of Court, we request the California Supreme Court to decide the question of California law set forth in Part II of this order. This case is withdrawn from submission until further order of this court, and all further proceedings in this court are stayed pending final action by the California Supreme Court.
There is no controlling precedent resolving the question we set forth below. The answer will determine the outcome of the present appeal. Our phrasing of the question below is not meant to restrict the California Supreme Court’s consideration of the issue involved. We agree to follow the answer provided by the California Supreme Court.
I
CAPTION AND COUNSEL
Michael and Rosemary Verdugo are considered the petitioners in this request because they appeal from the district court’s adverse ruling on the specified issue. The caption of this case is:
MICHAEL VERDUGO, brother of Decedent; ROSEMARY VERDUGO, mother, successor and heir of Mary Ann Verdugo, Decedent, Plaintiffs-Appellants, v. TARGET CORPORATION, a Minnesota corporation, Defendant-Appellee.
The names and addresses of counsel are:
For the Verdugos: Robert A. Roth, Tarkington, O’Neill, Barrack & Chong, Berkeley, CA; David Griffith Eisenstein, Law Offices of David G. Eisenstein, P.C., Carlsbad, CA.
For Target Corporation: Benjamin R. Trachtman, Ryan M. Craig, Trachtman & Trachtman, Mission Viejo, CA.
II
QUESTION OF LAW
The question of law we wish to be answered is:
In what circumstances, if ever, does the common law duty of a commercial property owner to provide emergency first aid to invitees require the availability of an Automatic External Defibrillator (“AED”) for cases of sudden cardiac arrest?
III
STATEMENT OF FACTS
Mary Ann Verdugo, age 49, was shopping at a Target store in Pico Rivera, California, with her mother and brother on August 31, 2008, when she suffered sudden cardiac arrest and collapsed. In response to a 911 call, paramedics were dispatched from a Los Angeles County Fire Department station nearby. It took the paramedics several minutes to reach the store, and several more minutes to reach Verdu-go inside. By the time the paramedics arrived, Verdugo was dead and could not *1046 be resuscitated. Target did not have an AED in its store.
Nearly 300,000 Americans suffer from sudden cardiac arrest every year, and only eight percent survive. Sudden cardiac arrest is caused by a problem with the heart’s electrical impulses, causing it to stop pumping blood. Unlike a myocardial infarction (a heart attack), sudden cardiac arrest often strikes with no prior symptoms and can strike a heart that is otherwise healthy. A shock from an AED can restart a heart by correcting the misfiring of its electrical impulses. To be effective, the AED must be used immediately. The chance of surviving sudden cardiac arrest decreases by 10 percent for every minute that passes before the heart’s rhythm is restored. Cardiac Arrest Survival Act of 2000, Pub.L. No. 106-505, § 402(5), 114 Stat. 2314. It is estimated that 30 percent of those who experience cardiac arrest could be saved if an AED were used immediately. Id. § 402(4).
Target sells AEDs on its website for approximately $1,200. AEDs can be used by the untrained, as the devices provide oral instructions to users and “are designed not to allow a user to administer a shock until after the device has analyzed a victim’s heart rhythm and determined that an electric shock is required.” Id. § 402(8).
Verdugo’s mother and brother filed a wrongful death action against Target in California Superior Court, and Target removed to federal court. Target then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the district court granted, holding that Target had no duty to acquire and install an AED. The Verdugos appealed, arguing that a duty does exist under California common law and, in the alternative, asking that the question be certified to the California Supreme Court. Target opposed certification.
IV
STATEMENT OF REASONS FOR THE REQUEST
The resolution of the question presented by this case implicates strong state interests and could have wide-reaching effects in the state of California. The Verdugos seek the announcement of a common-law rule that would require many retail establishments across the state to acquire AEDs. Target suggests that such a rule would burden it and many companies like it, that California common law does not support such a rule, and that the California AED statutes preclude the imposition of such a common law rule. More broadly, Target maintains that California common law does not support any requirement that property owners provide first aid to invitees beyond calling 911 to summon assistance. As a matter of comity, we consider the California Supreme Court better positioned to address these major questions of California tort law than this court. See Klein v. United States, 537 F.3d 1027, 1030 (9th Cir.2008) (order).
A
Both parties agree that there is no statutory duty in California requiring a business like Target to obtain a defibrillator. The California legislature has enacted a series of statutes governing AEDs that are acquired by building owners and managers. See Cal. Health & Safety Code § 1797.196 (West 2012); Cal. Civ.Code § 1714.21(d) (West 2012) (providing immunity from civil liability for those who acquire AEDs as long as they comply with specified maintenance, testing, and notice requirements). These statutes “reflect legislative policy to encourage the availability of AEDs by providing immunity from liability for those who acquire the *1047 devices.” Rotolo v. San Jose Sports & Entm’t, LLC, 151 Cal.App.4th 307, 314, 59 Cal.Rptr.3d 770 (2007).
At the same time, the legislature has declared that “[n]othing in this section ... may be construed to require a building owner or a building manager to acquire and have installed an AED in any building.” Cal. Health & Safety Code § 1797.196(f). Whether the AED statutes as a whole, including § 1797.196(f), preclude the existence of a common law duty to acquire an AED is one of the issues in this case. See Rotolo, 151 Cal.App.4th at 325, 59 Cal.Rptr.3d 770.
Target argues, and the district court held, that the statutory scheme has “occupied the field,” and that imposing a common law duty here would “defeat the underlying legislative purpose.” Id. at 314, 59 Cal.Rptr.3d 770. For this proposition, Target relies largely on Rotolo, which held that where a hockey rink had acquired an AED but failed to notify invitees of its existence and location, and a hockey player died as a result, the statutory scheme precluded common law liability where there had been compliance with the statutory requirements for immunity. Id. at 322-23, 59 Cal.Rptr.3d 770.
The Verdugos maintain, to the contrary, that the thrust of California’s legislative scheme regarding AEDs is to encourage their availability by providing immunity for those who acquire them and comply with training and maintenance requirements. Id. at 319-20, 59 Cal.Rptr.3d 770. According to the Verdugos, the statutes deal with situations in which business owners do acquire AEDs and do not apply to the situation presented here, where a business owner has not acquired an AED. Imposing a common law duty to acquire an AED in these circumstances, the Verdugos maintain, would not frustrate the legislature’s desire to promote the acquisition of AEDs by providing a safe harbor from liability for those who install and maintain them properly, as any business required to install an AED under a common law tort theory would be entitled to statutory immunity. On this analysis, the existence of California’s statutory scheme is not determinative as to whether a common law duty exists.
B
If the court were to accept the Verdugos’ view of the relationship between the AED statutes and California common law, then the pertinent question would become whether Target Stores had a duty under California common law to have an AED available. There is under California law a “special relationship” between business owners and their invitees, which creates a duty to provide “ ‘assistance [to] ... customers who become ill or need medical attention.’ ” Delgado v. Trax Bar & Grill, 36 Cal.4th 224, 241, 30 Cal.Rptr.3d 145, 113 P.3d 1159 (2005) (alteration in original) (quoting Breaux v. Gino’s, Inc., 153 Cal.App.3d 379, 382, 200 Cal.Rptr. 260 (1984)). Beyond this basic principle, California’s invitee precedents are in some tension as they pertain to the issue in this case.
Target suggests, first, that the duty to provide medical assistance to invitees is uniformly discharged simply by calling 911, relying for this proposition on Breaux. In Breaux, the Court of Appeal held that a restaurant had fulfilled its duty to a choking patron by summoning emergency services and was not required to provide further assistance. 153 Cal.App.3d at 381-82, 200 Cal.Rptr. 260. The Verdugos point out, however, that Breaux relied in its reasoning on a statutory scheme similar to the one implicated in Rotolo: California law required the posting in restaurants of first aid instructions for choking victims and created a safe harbor from liability for restaurants that did so. Id. at 381 & n. 2, *1048 200 CaLRptr. 260. Gino’s, the defendant in Breaux, had posted the instructions required for the safe harbor. Under those circumstances, imposing a common law duty beyond calling 911 would, as in Roto-lo, have contradicted the legislative scheme. Here, in contrast, Target did not have an AED available on the premises, and so had not taken the steps necessary under the statute to trigger immunity from liability.
Just as Target relies on Breaux, so the Verdugos rely on Delgado, maintaining that it refutes any categorical rule that summoning emergency services is always sufficient to fulfill a business’s duty of care to its patrons. In Delgado, the court held that a bar had a duty to do more than simply call the police when a fight broke out between several of its customers. 36 Cal.4th at 245-46, 30 Cal.Rptr.3d 145, 113 P.3d 1159. In determining the scope of the duty owed to invitees, Delgado observed, foreseeability of injury is a “ ‘crucial factor.’ ” Id. at 237, 30 Cal.Rptr.3d 145, 113 P.3d 1159 (quoting Ann M. v. Pac. Plaza Shopping Ctr., 6 Cal.4th 666, 676, 25 Cal.Rptr.2d 137, 863 P.2d 207 (1993)). The foreseeability of the harm must be balanced “against the burden of the duty to be imposed.” Ann M., 6 Cal.4th at 678, 25 Cal.Rptr.2d 137, 863 P.2d 207. Where the burden of preventing the harm is great, a higher degree of foreseeability is required, and where “the harm can be prevented by simple means, a lesser degree of foreseeability may be required.” Id. at 679, 25 Cal.Rptr.2d 137, 863 P.2d 207 (internal quotation marks omitted). Applying this analysis, the court in Delgado reasoned that the bar’s bouncers could foresee that a fight was about to erupt and, in that situation, there were “reasonable, relatively simple, and minimally burdensome steps” they could have taken to prevent it. Delgado, 36 Cal.4th at 246, 30 Cal.Rptr.3d 145, 113 P.3d 1159. In so holding, the court distinguished Ann M., in which the plaintiff was raped in the shopping center where she worked. Ann M., 6 Cal.4th at 671, 25 Cal.Rptr.2d 137, 863 P.2d 207. Noting that hiring security guards would be relatively burdensome, the court concluded that the harm that befell the plaintiff was not sufficiently foreseeable to justify imposing this duty. Id. at 679-80, 25 CaLRptr .2d 137, 863 P.2d 207.
While the court has thus laid out a basic iramework for analyzing the scope of the duty to prevent harm to invitees, neither Delgado nor Ann M. involved the duty to provide first aid to invitees, much less decided the precise issue presented here, the duty to have AEDs available on one’s business premises. Nor does applying the general test articulated in Delgado provide “clear controlling California precedent.” Klein, 537 F.3d at 1030 (internal quotation marks omitted).
On one hand, it was not foreseeable to Target that Verdugo herself would suffer cardiac arrest, and so Target was not aware of the specific danger, which the bouncers in Delgado were. On the other hand, California courts considering foreseeability as an aspect of duty often focus on whether the type of harm suffered was foreseeable, not whether “ ‘a particular plaintiffs injury was reasonably foreseeable in light of a particular defendant’s conduct.’ ” Carrera v. Maurice J. Sopp & Son, 177 Cal.App.4th 366, 378, 99 Cal.Rptr.3d 268 (Cal.Ct.App.2009) (emphasis in original) (quoting Ballard v. Uribe, 41 Cal.3d 564, 572 n. 6, 224 Cal.Rptr. 664, 715 P.2d 624 (1986)). In this sense, it could be foreseeable to Target that one of its customers might suffer sudden cardiac arrest while shopping, given the fact that more than 700 people die of sudden cardiac arrest in the United States every day. Cardiac Arrest Survival Act § 402(1). Even so, it is not clear to us under California precedents whether the foreseeability in *1049 quiry is to be undertaken on a store-by-store or a company-wide basis, or what degree of likely occurrence of a particular illness is sufficient to make that occurrence foreseeable. Moreover, the parties dispute the degree to which the foreseeability issue should be influenced by the location of this particular Target store—-in a shopping center—or by its large size, both factors which increase the likelihood that 911 or other outside AED assistance will not be able to reach patrons suffering sudden cardiac arrest in time to save them.
The burden side of the analysis is similarly debatable under the existing precedents. Target sells AEDs online for approximately $1,200 each. For a property owner to be eligible for the statutory immunity from liability, an AED, once purchased, must be checked every 30 days, and one employee must be trained in its use. Cal. Health & Safety Code § 1797.196(b)(2). Requiring Target to purchase and maintain an AED for each of its California stores would be economically less burdensome than, for example, requiring it to hire security guards to prevent crime. See Ann M., 6 Cal.4th at 679, 25 Cal.Rptr.2d 137, 863 P.2d 207; see also Sharon P. v. Arman, 21 Cal.4th 1181, 1190, 91 Cal.Rptr.2d 35, 989 P.2d 121 (1999). On the other hand, requiring such preventive purchases appears more burdensome than requiring already-employed bouncers to intervene to stop a fight once it occurs. See Delgado, 36 Cal.4th at 246-47, 30 Cal.Rptr.3d 145, 113 P.3d 1159. Moreover, as with the foreseeability prong, the California precedents do not provide clear guidance as to whether the burden is to be evaluated on a store-by-store or a company-wide basis.
In sum, given the uncertainty in the most applicable California precedents as applied to the present circumstances, weighing the foreseeability of the harm suffered by Verdugo against the burden to be imposed on Target does not provide a clear answer to the question of whether Target had a duty under California law to purchase AEDs.
C
The court in both Ann M. and Delgado also mentioned the factors listed in Rowland v. Christian, 69 Cal.2d 108, 112-13, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), as being useful “ ‘in determining the existence and scope of a duty [to invitees] in a particular case.’” Delgado, 36 Cal.4th at 237 n. 15, 30 Cal.Rptr.3d 145, 113 P.3d 1159 (quoting Ann M., 6 Cal.4th at 675 n. 5, 25 Cal.Rptr.2d 137, 863 P.2d 207).[1] In addition to foreseeability and burden, these factors are:
[1] the degree of certainty that the plaintiff suffered injury, [2] the closeness of the connection between the defendant’s conduct and the injury suffered, [3] the moral blame attached to the defendant’s conduct, [4] the policy of preventing future harm, ... and [5] the availability, cost, and prevalence of insurance for the risk involved.
Rowland, 69 Cal.2d at 113, 70 Cal.Rptr. 97, 443 P.2d 561.
Applying these factors also does not provide a clear answer to the question wheth *1050 er Target had a duty to have an AED available on its premises. Without an AED on-site, it was virtually certain that Verdugo would die. Defibrillation is the only definitive treatment for sudden cardiac arrest, and “every minute that passes before returning the heart to a normal rhythm decreases the chance of survival by 10 percent.” Cardiac Arrest Survival Act § 402(5). On the other hand, it is far from certain that immediate treatment with an AED will revive a particular patient. While the first two factors thus may support the imposition of a duty, they do so only mildly. The third factor weighs against finding a duty, as Target’s failure to provide an AED was not morally blameworthy in the sense that term is used by California courts. See Rotolo, 151 Cal. App.4th at 337-38, 59 Cal.Rptr.3d 770. The fourth factor strongly supports finding a duty, as doing so would help prevent future harm by increasing the availability of AEDs. The final factor also supports a duty, as California has provided a safe harbor from liability for businesses that acquire AEDs, so no insurance would be required as long as the conditions for invoking the safe harbor were met. Cal. Civ.Code § 1714.21(b).
D
Pertinent to our request for certification, finally, is that courts in other jurisdictions applying similar balancing or multi-factor approaches to liability have reached divergent conclusions when confronting AED issues similar to the one in this case. Some courts to have considered the matter have held that there is no duty on the part of business owners to provide AEDs to be used on their invitees in the event of cardiac arrest. See Boller v. Robert W. Woodruff Arts Ctr., Inc., 311 Ga.App. 693, 716 S.E.2d 713, 715 (2011); L.A. Fitness Int’l, LLC v. Mayer, 980 So.2d 550, 561 (Fla.Dist.Ct.App.2008); Salte v. YMCA of Metrop. Chi. Found., 351 Ill.App.3d 524, 286 Ill.Dec. 622, 814 N.E.2d 610, 615 (2004); Atcovitz v. Gulph Mills Tennis Club, Inc., 571 Pa. 580, 812 A.2d 1218, 1224 (2002); Rutnik v. Colonie Ctr. Court Club, Inc., 249 A.D.2d 873, 672 N.Y.S.2d 451, 453 (1998). Other courts, however, have allowed similar AED suits to go to the jury, concluding that the duty question turns .on case-specific factual matters. See Aquila v. Ultimate Fitness, 52 Conn. L. Rptr. 81, 2011 WL 2611820 (Conn.Super.Ct.2011); Ksypka v. Malden YMCA 22 Mass. L. Rptr. 122, 2007 WL 738463 (Mass.Super.Ct.2007); Fowler v. Bally Total Fitness Corp., No. 07 L 12258 (Ill.Cir.Ct. Oct. 27, 2007).
Thus, neither California precedents nor cases from other courts provide us with sufficient guidance to answer the important question of California tort law presented by this case. We therefore respectfully ask the California Supreme Court for guidance and will follow that guidance once received.
V
Pursuant to California Rule of Court 8.548(d), the Clerk of this court shall forward an original and 10 copies of this order, under official seal, to the California Supreme Court, along with a certificate of service on the parties, and copies of all briefs, excerpts of record, requests for judicial notice, and post-argument letters that have been filed with this court.
The parties shall notify the Clerk of this court within 14 days of any decision by the California Supreme Court to accept or to decline our request. If the California Supreme Court accepts, the parties shall file a joint report six months after the date of acceptance and every six months thereafter advising us of the status of the proceedings. The parties shall also notify the Clerk of this court within 14 days of the *1051 issuance of an opinion by the California Supreme Court.
IT IS SO ORDERED.

. Rowland seems to have originally articulated these factors as helpful in determining whether to make an exception to “the general principle that a person is liable for injuries caused by his failure to exercise reasonable care,’’ and not for the purpose of determining the precise scope of the duty of care that arises from a special relationship. Rowland, 69 Cal.2d at 112, 70 Cal.Rptr. 97, 443 P.2d 561. Nevertheless, the California Supreme Court has since considered those factors as “useful” for this purpose. See Delgado, 36 Cal.4th at 237 n. 15, 30 Cal.Rptr.3d 145, 113 P.3d 1159; Ann M., 6 Cal.4th at 675 n. 5, 25 Cal.Rptr.2d 137, 863 P.2d 207.