[Civ. No. 18025. Second Dist., Div. One. July 16, 1951.]

MARJORIE SEEDBORG et al., Respondents, v. LAKE-WOOD GARDENS CIVIC ASSOCIATION (a Corporation), Appellant.

Kenneth J. Murphy for Appellant.

Albert J. Corske for Respondents.

WHITE, P. J.—Defendant has appealed from a judgment entered upon the verdict of a jury in an action for damages for personal injuries.

Defendant, a nonprofit corporation organized for civic purposes and the betterment of the community, owned and operated a clubhouse and playground as a recreation center.

A Hallowe'en party was planned for October 31, 1948, and one of the members of the association, Mrs. Worley, was placed in charge of the affair, which was to include a costume parade in the afternoon for the children, and entertainment at the clubhouse in the evening, with food, dancing and concessions. Among the concessions planned by Mrs. Worley was a dart booth, to be arranged more or less as a square, with two sides, a front counter, a backdrop, and to be decorated in Hallowe'en colors. For the backdrop, to which the dart board was to be fastened, Mrs. Worley proposed to use a large sign, about 8 feet square, which was on the grounds. The sign was of wood and weighed approximately 140 to 150 pounds. It was not currently in use, but was kept or stored along a fence on one side of the grounds and fastened to the fence with a chain and padlock.

On October 30, 1948, Mrs. Worley had the sign removed by some of the volunteer workers to a position in the rear of the dart booth, where it was placed against a fence at the rear of the booth. The sign was not fastened to the fence in any way, but was left leaning against the same at an angle with its base 1½ to 2 feet from the fence. The latter was constructed of vertical 1 x 6 boards with a 4 to 6-inch space between the boards. Early in the afternoon Mrs. Worley left the grounds to procure, among other supplies, some nails or spikes with which to fasten the sign securely to the fence.

About the time of Mrs. Worley's departure, around 1 o'clock in the afternoon, plaintiff Mrs. Seedborg came to the grounds for the purpose of putting up decorations. Mrs. Seedborg was standing on a ladder fastening some streamers to the dart booth when the sign fell, striking her or the ladder, or both, and causing her to fall to the ground. It would appear from the evidence that the falling of the sign was probably caused by a gust of wind.

Appellant urges as grounds for reversal (1) that the court erred in permitting an amendment to the complaint "to conform to proof"; (2) that evidence was erroneously admitted; (3) that error was committed in the giving and refusal of instructions; (4) that the verdict is not supported by the evidence; and (5) that the amount of the verdict, $2,500, is excessive. Examination of the entire record, however, compels the conclusion on our part that the asserted errors did not result in a miscarriage of justice and did not impair any substantial right of the defendant.

It was alleged in the original complaint that the plaintiffs

were husband and wife; that as a result of defendant's negligence "plaintiff was hurt and injured in her health, strength and activity, sustaining severe shock, sprains, multiple contusions and abrasions about and upon her head and body, all of which said injuries are of a permanent nature and have caused and will continue to cause plaintiff great physical pain and suffering, nervousness, loss of appetite and sleep, and impairment of her ability to perform usual household duties or to be employed at gainful employment, . . . ." Further, it was alleged that "plaintiff Marjorie Seedborg was and has been unable to work, and plaintiffs were compelled to incur bills for medical attention, hospitalization, nursing, housekeeper, medicines, ambulance and laundry, all to plaintiffs' damage in the sum of Seven Hundred Fifty Dollars; . . . plaintiff Paul Seedborg was compelled to remain home from work for a period of one week to care for plaintiff Marjorie Seedborg and to act as housekeeper, . . . ."

In arguing to the jury after the taking of evidence had been concluded, counsel for plaintiffs. urged that the husband was entitled to the reasonable value of the services which he lost as a result of Mrs. Seedborg's being incapacitated. Upon objection that this claim was without the issues made by the complaint, a recess was taken, and after considering the matter in chambers, the court allowed an amendment to the complaint to be filed, which amendment alleged, in substance, that prior to her injuries the plaintiff wife was in good health and capable of performing and did perform the usual duties of a housewife, "was a pleasing and loving wife to said husband, and as a consequence thereof said husband received much comfort and happiness in her society and companionship." That as a result of the injuries the husband "has been deprived of the services of his said wife, and his comfort and happiness in her society and companionship have been greatly impaired"; that such deprivation will continue for a long time; and the wife "has become highly nervous and irritable; all to plaintiffs damage in the sum of $25,000.00."

Appellant argues that the amendment allowed by the court introduced a new and different cause of action—a cause of action in the husband, rather than in the wife or in the community, for loss of his wife's services. Further, it is pointed out, this new cause of action accrued on October 30, 1948, and was barred by the statute of limitations when it was allowed to be added as an amendment on March 2, 1950. Appellant asserts that the allowance of such amendment was

prejudicial, in that appellant had had no opportunity to investigate the merits of such an action or go into it at the time of the taking of depositions or at the trial, and when the claim was made for the first time at such a late date the benefit of making investigation was lost. Despite appellant's able and earnest arguments in this regard, however, we are not persuaded that prejudice to any substantial right resulted from the trial court's action. The trial court, when the question arose, offered to continue the case and permit it to be reopened, but counsel for the defense declined the offer. In this respect, the record shows, in part, the following:

"THE COURT: . . . As far as the new matter being brought in and the surprise alleged the Court is of the opinion that you are entitled to have the case reopened and to a reasonable time to make further investigation. I think, as Mr. Corske says, most of the investigation would have been made under the allegations which are already contained in the complaint so that I don't think you are damaged too much by the surprise but the Court will permit the case to be reopened and will permit additional time for investigation.

"MR. MURPHY: (Defense Counsel): Your Honor, I appreciate the Court's consideration but this accident happened way back in 1947 (the accident happened October 30, 1948) and the trial took place in March, 1950 and the six weeks' period (the admitted period of the wife's total disability) has long since passed and any investigation that I would make now would be unavailing."

In further discussion, it was pointed out by plaintiffs' counsel that the action was not filed until some months after the six weeks' period had elapsed, and had the amendment been made earlier the defense would be in no better position than it was now. The trial court permitted the amendment "for the reason that it believes that the matter alleged in the proposed amendment or amendments is not substantially different than that which has already heretofore been alleged under general damages to the wife and that if any investigation were to be made by the defendant, as I presume it was, the Court believes that most of the investigation would have covered the facts pertaining to loss of services as well as to the general damages to the wife."

The reasons given by the trial court for allowing the amendment, whether such allowance may be regarded as technically erroneous or not, are persuasive that no miscarriage of justice resulted. The original complaint contained the

allegation, among others, of impairment of the wife's ability to perform usual household duties or to be employed at gainful employment, and general damages of $25,000 were sought. Further, it was alleged that the husband was obliged to remain home from work for one week to act as housekeeper. The prayer was for damages both general and special in behalf of both plaintiffs. The jury made no segregation of damages, but awarded a lump sum of $2,500. The jury was instructed to bring in one verdict for an aggregate amount, without allocating any portion to either plaintiff. The record discloses no request by defendant for a special verdict or verdicts with respect to damages sustained by the husband, nor any objection to the bringing in of a single verdict. In view of all the circumstances above set forth, it must be concluded that no miscarriage of justice is manifest.

 The court admitted, over objection, testimony by plaintiff wife that her sister-in-law, who took care of her for one week, was a substitute teacher earning $12 per day and that she lost five days' pay in taking care of her sister. The court further admitted, without objection, testimony that the husband also took a week off from work to care for his wife, at a loss in wages of $75. It is urged that since the jury was instructed that damages, if awarded, should include a reasonable amount for nursing services and that their decision thereon must be founded upon the evidence before them, and that since no evidence of the reasonable value of such services was offered, and no claim was asserted or could have been asserted for the actual loss of earnings, such evidence, which had no bearing on the issues, was nevertheless the only evidence before the jury, and that prejudice resulted.

Contrary to appellant's contentions, the jury were entitled to consider the nature of the services rendered as shown by the evidence and draw upon their own judgment and experience in determining the reasonable value thereof (see *Seib* v. *Mitchell*, 10 Cal.App.2d 91, 95 [52 P.2d 281]; *Nylund* v. *Madsen*, 94 Cal.App. 441 [271 P. 374]; *Lundberg* v. *Katz*, 44 Cal.App.2d 38, 46 [111 P.2d 917], and cases cited); but even assuming the jury considered the evidence complained of in determining such value, the result is a conclusion that the value of such services was the sum of $135 for two full weeks' services; and if such amount be excessive, it is so in such a small degree as not to warrant appellate interference by way of reversal or modification of the judgment. The error, if any, was too slight to justify the claim of prejudice, the entire circumstances being considered.

It is next claimed that the court erred in instructing the jury in part as follows: "It has been established that the sign board involved in the accident was the property of the defendant Lakewood Gardens Civic Association, a corporation, and that it was in charge of an agent of that defendant, acting within the scope of her authority. Thus, her conduct shall be deemed by you to have been the conduct of the corporation, . . . ." This contention requires but little comment. No evidence was presented by the defendant to refute the testimony of Mrs. Worley (the agent) and Mr. Griswold, vice-president of the defendant corporation, that Mrs. Worley was the duly authorized chairman of entertainment for the Halloween party and was authorized to use any portion of the grounds or equipment, including the sign, that she might need. It is further undisputed that the removal of the sign from its place of safety and its setting up as a backdrop for the dart board were done pursuant to the directions of Mrs. Worley. Failure to produce minutes of the meeting of the board of directors to show the authority conferred upon Mrs. Worley is hardly a dereliction of which appellant may complain, since it was in the more ready position to produce such records, and it may be assumed that such records would have been produced could they have aided appellant's cause. There being no evidence whatever to rebut the showing of agency on the part of Mrs. Worley, error cannot be predicated upon the instruction complained of.

The court instructed the jury that "The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent." Prejudicial error is predicated upon the asserted conflict between the foregoing instruction and an instruction upon the subject of res ipsa loquitur, and further upon the giving by the court of its own motion another instruction upon the subject of res ipsa loquitur. The asserted conflict is more apparent than real. Clearly, under the evidence, instructions on the subject of res ipsa loquitur were proper (*Wills* v. *Price*, 26 Cal.App.2d 338 [79 P.2d 406]; *Raber* v. *Tumin*, 36 Cal.2d 654 [226 P.2d 574]; *Welch* v. *Sears, Roebuck & Co.*, 96 Cal.App.2d 553 [215 P.2d 796]). By the instruction given upon the court's own motion (BAJI 206-C), the jury were advised that the previous instruction on res ipsa loquitur, while it might appear "to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence," is

based "on a special doctrine of the law which may be applied only under special circumstances." The remainder of the instruction clearly sets forth the circumstances which must appear to justify the application of the doctrine, and the nature of the evidentiary problem is further set forth in another instruction given by the court (BAJI 206-D). No real conflict appears in the instructions, and there is no basis for assuming that the jury were confused or misled.

■ The trial court declined to give two instructions submitted by defendant to the general effect that the liability of an owner to an injured invitee must be based on actual or constructive knowledge of a dangerous condition, or evidence that the condition had existed long enough for the owner, in the exercise of reasonable care, to have discovered the condition and remedied it. The refusal to give these instructions was not error. As noted by the trial court in refusing the proffered instructions: "Covered by BAJI 213-C and the owner, through its agent, Mrs. Worley, knew of the condition and could have remedied it for one-half hour before the accident." The undisputed evidence supports the trial court's view and leaves no issue of whether the owner had a reasonable time in which to discover and remedy the dangerous condition. (See *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841].) The cases of *Louie* v. *Hagstrom's Food Stores, Inc.,* 81 Cal.App.2d 601 [184 P.2d 708], and *Girvetz* v. *Boys' Market, Inc.,* 91 Cal.App.2d 827 [206 P.2d 6], have therefore no application to the virtually conceded facts of the instant case.

In addition, by the instructions given, considered in their entirety, the court fully and fairly advised the jury as to the law applicable to the situation presented, and no error or conflict therein appears which would warrant a reversal.

■ It is urged that the verdict is not supported by the evidence. There is substantial evidence to support a conclusion that an agent of defendant caused the sign to be placed in a position where it was likely to be blown over by a slight gust of wind (there was no evidence of excessive winds on the day of the accident, or that an unusually strong breeze, not reasonably to be anticipated, arose at the time of the accident). This contention requires no further consideration.

■ It is argued that the damages are excessive. It is true that plaintiff Mrs. Seedborg suffered no broken bones, but from a consideration of the evidence it does appear that she suffered painful, extensive and prolonged injuries. At the time of the trial, some 14 months after the accident, she

was still nervous, found it difficult to ride in elevators, was yet having difficulty with her neck, and in other ways had not fully recovered. The physician who examined her on behalf of the defense testified that in his opinion she was totally disabled for a period of six weeks. Considering the testimony concerning the pain, suffering, disability and inconvenience suffered by the plaintiff Mrs. Seedborg, as well as the diminished purchasing power of the dollar (*O'Meara* v. *Haiden*, 204 Cal. 354, 366, 367, 368 [268 P. 334, 60 A.L.R. 1381]), we find no reasonable foundation for holding that the verdict was the result of passion or prejudice.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.