Hayley **BAILEY**, a minor, Kari Bailey, an individual; Eddie Bailey, an individual, Plaintiffs,

v.

**COUNTY OF SAN JOAQUIN**, San Joaquin County Sheriff's Department; Sheriff Steve Moore, Deputy Sheriff Terry Breitmaier; and Does 1–50, inclusive, Defendants.

**No. Civ. S–08–543 LKK/KJM.**

United States District Court,
E.D. California.

Nov. 16, 2009.

**1170**

Michael E. Cardoza, Cardoza Law Offices, Tiffany Kathleen O'Connor, Jacqueline Carroll Fagerlin, The Cardoza Law Offices, Walnut Creek, CA, for Plaintiffs.

Mark Emmett Berry, Mayall Hurley Knutsen Smith and Green, Stockton, CA, for Defendants.

*ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

This case concerns a police officer's actions in approaching plaintiffs' house and firing his gun at plaintiffs' dog while it exited plaintiffs' front door. After striking the dog's paw, the bullet ricocheted and fragmented. Plaintiffs suffered injuries from being struck by the bullet fragments. Plaintiffs bring eight causes of action against three defendants. Defendants have moved for summary judgment on all

claims. For the reasons stated below, defendants' motion is granted in part.

## I. BACKGROUND

Defendants County of San Joaquin ("County"), Sheriff Steve Moore ("Moore"), and Deputy Sheriff Terry Breitmaier ("Breitmaier") moved for summary judgment.

Defendant Breitmaier was assigned to the County's code enforcement team ("SAFE team") for deployment on May 1, 2007.[1] Breitmaier had previously served in the SAFE team two or three times. Sergeant William Mitchell ("Mitchell") was assigned to supervise the SAFE team unit. A citizen had complained about a trailer home, possible transients and possible drug use. The complaint was directed at 2624 Munford Avenue, but for some unknown reason, the SAFE team was directed to plaintiffs' residence, 2706 Munford Avenue. The County did not confirm the address with the agency nor did it conduct a visual inspection of the property prior to deployment of the team.

When the SAFE team arrived at 2706 Munford Avenue, Plaintiffs Kari Bailey ("Kari") and Hayley Bailey ("Hayley") were in their home with some friends. Plaintiff Eddie Bailey ("Eddie") was not present. At the time of the incident, Hayley was five years old. Kari and Eddie are her parents. Prior to their arrival at plaintiffs' home, the SAFE team was informed of an arrest warrant for Eddie. The basis of the warrant was Eddie's failure to comply with a community service punishment for a misdemeanor traffic vio-

---

1. When considering a motion for summary judgment, the court views the evidence in the light most favorable for the non-moving party. Here, many factual issues are in dispute. Rather than identify each factual dispute in this section, the court will address each dis-

pute, as relevant, in the analysis section below. The facts presented in this section reflect the court's understanding of the facts viewed in the light most favorable to the plaintiffs.

lation. Breitmaier was not informed of the nature of Eddie's arrest warrant.

Immediately upon their arrival at plaintiffs' home, a deputy saw someone exit the back door. The person was plaintiffs' friend, Ona Rutledge, who was taking out the trash. Despite the fact that this was only a code enforcement violation, the defendants claim that they were concerned that someone would escape from the back yard. Accordingly, Mitchell and the deputy went to the back yard. Mitchell instructed Breitmaier to watch the front of the residence.

Breitmaier approached plaintiffs' front door alone. He walked through plaintiffs' front yard in which were numerous children's toys. After hearing a noise, Breitmaier withdrew his gun. Approaching the front door in this manner violated police tactical guidelines.

During this time, Rutledge informed Kari that police were at her house. Consequently, Kari went to the front door. Hayley and their dog, Daisy, accompanied Kari to the door. Hayley stood immediately to Kari's left at the front door. When Kari opened the front door, she attempted to keep Daisy inside the house. However, the dog started to exit the house. At that time, Breitmaier was two or three feet from the door.

Startled by the dog, Breitmaier fired his gun, and hit the dog's paw. The dog was in the doorway when the gun was fired, and Kari and Hayley were a few feet behind her, in the threshold of the door. Breitmaier saw Kari and Hayley when he fired his gun in their direction. Kari and Hayley did not pose any threat to Breitmaier. The bullet hit the porch, ricocheted, and fragmented. A fragment grazed Kari's right leg, another grazed Hayley's chest. A final fragment entered Hayley's right thigh; this fragment cannot be removed for medical reasons.

By shooting in the direction of any open doorway, Breitmaier violated his police training. In particular, Breitmaier was trained to be aware of his surroundings before he fires his gun. Additionally, Breitmaier should have been aware that bullets are highly unpredictable. Firing his weapon when two non-threatening individuals are in the range of fire constituted clear violations of police policies.

Immediately after Kari and Hayley were struck by the bullet fragments, Hayley began screaming that she was dying. Kari was aware that Hayley was shot. Breitmaier went to his car to obtain his first aid kit. Breitmaier or other officers took Daisy to the veterinarian without Kari's knowledge.

Eventually, Kari and Hayley were transported to the hospital. Eddie joined them at the hospital, and was promptly arrested by police officers for the outstanding warrant. He was booked and subsequently released. Eddie took about two days off from work following this incident to care for Kari and Hayley. Both Kari and Hayley have faced, and continue to face difficulties coping with the shooting.

Additionally, the County refused to pay for Daisy's veterinary care. The veterinarian would not release the dog without payment. As a result, plaintiffs were forced to take out a loan in order to retrieve their dog. The dog was with the veterinarian for three or four days. Plaintiffs had to pay boarding fees for each day.

Breitmaier did not receive any discipline or training as a result of this incident.

## II. STANDARD OF REVIEW FOR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there exists no genuine issue as to any

material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 853 (9th Cir.1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.*, 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *see also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United*

States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam* )); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. *See Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

## III. ANALYSIS [2]

### A. Claims Against Breitmaier

#### 1. Section 1983

##### a. Fourth Amendment Excessive Force Claim

■ To determine whether Breitmaier is entitled to summary judgment on Kari's and Hayley's claims of excessive force in violation of the Fourth Amendment, the court must first, decide whether a reasonable jury could find that Kari and Hayley were seized, and second, decide whether that jury could find that the manner in which Breitmaier seized them was unreasonable. *See Hopkins v. Bonvicino*, 573 F.3d 752, 776 (9th Cir.2009) (Violation of the Fourth Amendment for excessive force only occurs when an officer used such force "in effecting a seizure."). With respect to the first step, defendant argues that no facts support that plaintiffs Kari and Hayley were seized by him. Defendant refers to *County of Sacramento v.*

---

**2.** Plaintiffs do not oppose defendants' motions for summary judgment as to a Section 1983 claim under the Eighth Amendment, and to their Section 1985 and 1986 claims because

no facts support these claims. Accordingly, the court grants summary judgment for defendants on these causes of action.

*Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), in support of his argument that no seizure occurred. *Lewis* supports the proposition that a seizure only occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Id.* at 844, 118 S.Ct. 1708. Defendant misinterprets *Lewis* to require the officer to intend to terminate plaintiffs' movement through intentional means. *Lewis* only requires that an officer's action be intentional, and not accidental. *Lewis* is thus distinguishable from the case at bar. Specifically, *Lewis* considers the accidental actions of an officer in a high speed automobile chase that resulted in the death of the individual pursued. *Id.* *Lewis* turns on the accidental actions of an officer in driving his vehicle, not as here, in defendant's intentional actions in approaching plaintiff's home and firing his gun. While defendant may not have intended that his bullet fragment and strike plaintiffs, it appears plain that he did intend to approach the front door of plaintiffs' house with his gun drawn, and to fire his weapon.

The correct test for a seizure is that, "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" is the person seized. *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), *quoting U.S. v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The test for a seizure is objective, "whether the officer's words and actions would have conveyed [that the person was being ordered to restrict his movement] to a reasonable person." *Id.* Here, considering the facts in the light most favorable to plaintiffs, Kari and Hayley were aware that police officers were surrounding their home and saw Officer Breitmaier at the front door with his gun drawn. A reasonable jury could decide based on these facts that Kari and Hayley were seized, and therefore Fourth Amendment protections apply.

Because a reasonable jury could determine that Kari and Hayley were seized, the court must now consider whether a reasonable jury could conclude the Breitmaier used excessive force. In determining whether a seizure is reasonable, "courts consider the totality of the circumstances, . . . and 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *U.S. v. Guzman–Padilla,* 573 F.3d 865, 876–77 (9th Cir.2009) *quoting Scott v. Harris,* 550 U.S. 372, 383, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) and *citing Graham v. Connor,* 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and *Samson v. Ca.,* 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). Here, plaintiffs have presented evidence that (1) Breitmaier violated police procedure in approaching their home; (2) plaintiffs' dog did not act aggressively towards Breitmaier; (3) Breitmaier saw Kari and Hayley when he fired his gun at the dog; (4) Breitmaier had reason to believe a child was in the house; and (5) that Breitmaier fired his gun under circumstances in which he could not predict where the bullet would likely travel or if fragmented, who might be injured. Based on this evidence, a reasonable jury could find that Breitmaier's actions were unreasonable, and thereby violated plaintiff's Fourth Amendment rights. Thus, defendant's motion for summary judgment as to plaintiff's excessive force claim is denied.

### b. Unreasonable Search

Defendant does not move for summary judgment on plaintiffs' claim for a violation of the Fourth Amendment with respect to the search of the curtilage of plaintiffs'

home. However, plaintiffs nonetheless argue in opposition that they have stated a claim for an unreasonable search. In his reply, defendant argues that plaintiffs did not plead a cause of action for an unreasonable search in their complaint. Upon review of plaintiffs' complaint, it appears that plaintiffs have only pled a cause of action under the Fourth Amendment for excessive force. However, because this issue was not raised in defendant's motion, the court will not address it at this time. The court notes that pursuant to its June 3, 2008 order, Doc. No. 12, "No further . . . amendments to pleadings is permitted except with leave of court, good cause having been shown."

#### c. Due Process

■ Defendant also argues that plaintiffs' have not presented evidence sufficient to support a claim for the violation of their due process rights, yet fails to identify any specific facts or theories to support this argument. Plaintiffs, however, argue that they have presented evidence sufficient to support a claim for violation of their substantive due process rights. Specifically, plaintiffs argue that under *Lewis*, Breitmaier's actions were deliberately indifferent and shock the conscience. 523 U.S. at 845–46, 118 S.Ct. 1708. Here, plaintiffs have provided evidence that Breitmaier saw children's toys as he crossed plaintiffs' front yard, and saw a young child and her mother in the doorway and within the range of fire when he fired his gun. A reasonable jury could decide from this evidence that Breitmaier was deliberately indifferent to human life and that his actions shock the conscience. Thus, defendant's motion for summary judgment on plaintiffs' due process claim is denied.

#### d. Qualified Immunity

Based on the discussion of clearly established law above, and viewing the facts in the light most favorable to plaintiffs, no reasonable officer in Breitmaier's position could believe that his actions were constitutional. *See, e.g., Boyd v. Benton County,* 374 F.3d 773, 779 (9th Cir.2004) (Officers used excessive force when they discharged weapon "blind" into a room occupied by innocent bystanders without considering alternatives or measures to reduce the risk of injury.); *Lewis,* 523 U.S. at 845–55, 118 S.Ct. 1708 (describing the Supreme Court's due process analysis).

#### 2. State Law Claims

#### a. Assault and Battery

■ Breitmaier moves for summary judgment on plaintiffs' claims for assault and battery. However, defendant only argues that plaintiffs cannot meet the elements of battery. Similarly plaintiffs only address battery in their opposition. For this reason, the court construes defendant's motion as only moving for summary judgment as to battery, and not as to assault.

■ Under California law, the elements of battery are: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *Brown v. Ransweiler,* 171 Cal.App.4th 516, 526–27, 89 Cal.Rptr.3d 801 (Cal.Ct.App.2009) (internal citations omitted). When a state law battery claim is brought against a police officer, "a plaintiff must prove that the peace officer's use of force was unreasonable. . . . The question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer." *Id.* at 527, 89 Cal. Rptr.3d 801.

Defendant argues that plaintiffs cannot show that Breitmaier possessed the requi-

site intent to harm Kari and Hayley. However, Breitmaier admits that he intentionally fired his gun to harm plaintiffs' dog. Under the doctrine of transferred intent, a defendant "who unlawfully aims at one ... and hits another ... is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act." *Singer v. Marx,* 144 Cal.App.2d 637, 643, 301 P.2d 440 (1956).[3] Consequently, Breitmaier's intent to harm the dog transferred to all those who were hit, specifically Kari and Hayley.

To bring a claim of battery against a law enforcement officer, a plaintiff must also demonstrate that the officer's actions were unreasonable. As discussed in the excessive force claim above, a reasonable jury could find that Breitmaier acted unreasonably. Thus, defendant's motion for summary judgment on plaintiff's battery claim is denied.

#### b. Negligence

■ Breitmaier argues that no evidence exists to support plaintiffs' claim that he owed Kari and Hayley a duty, and alternatively that Breitmaier did not breach any duty because he acted reasonably. In order to prove a defendant acted negligently, a plaintiff must show "duty, breach of duty, causation, and damages." *Carrera v. Maurice J. Sopp & Son,* 177 Cal.App.4th 366, 377, 99 Cal.Rptr.3d 268 (Cal.Ct.App. 2009). The court decides whether a duty exists. When deciding whether a duty exists, courts consider the following factors:

[ (1) ] the foreseeability of harm to the plaintiff, [ (2) ] the degree of certainty that the plaintiff suffered injury, [ (3) ]

the closeness of the connection between the defendant's conduct and the injury suffered, [ (4) ] the moral blame attached to the defendant's conduct, [ (5) ] the policy of preventing future harm, [ (6) ] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [ (7) ] the availability, cost, and prevalence of insurance for the risk involved.

*Id.* at 378, 99 Cal.Rptr.3d 268, *quoting Rowland v. Christian,* 69 Cal.2d 108, 113, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). When determining foreseeability with respect to duty, the court does not "decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather ... evaluate[s] more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Id., quoting Ballard v. Uribe,* 41 Cal.3d 564, 572–73, 224 Cal.Rptr. 664, 715 P.2d 624 (1986). Here, plaintiffs have presented evidence from which a jury could conclude facts from which the court would decide Breitmaier owed Kari and Hayley a duty of care. Specifically, when Breitmaier fired a weapon towards the open doorway of a house, aware at least that a person likely opened the door and at most actually seeing a young child and her mother, he owed them a duty to only fire his gun with due care and generally to follow procedures drafted in part to protect individuals like Kari and Hayley. Plaintiffs have provided evidence that under the circumstances it is foreseeable that

---

**3.** Defendants argue in their reply brief that *Singer* does not apply because the theory of transferred intent requires the intended party to be a person. Defendants provide no support for this theory, nor can the court find

any, and the court sees no reason to limit transferred intent doctrine in a situation where an individual shoots at a dog and two human bystanders are injured.

a bullet may fragment and may harm individuals outside of the direct line of fire. *See, e.g.,* Decl. of Chapman, 51:4–6. Furthermore, the balance of the remaining factors also indicate that defendant owed plaintiffs a duty: there is no question that Kari and Hayley suffered an injury because of Breitmaier's actions; the firing of the gun and the resulting bullet injuries are closely related; the careless use of a weapon by a police officer is an activity warranting moral blame; strong policy concerns weigh in favor of preventing officers from taking similar actions in the future; and the burden is relatively low for those in the defendant's position and imperceptible to the community. Consequently, plaintiffs have provided sufficient evidence, which if believed by the jury, the court would decide that defendant owed them a duty of due care when discharging a weapon and approaching a house.

Defendant argues in the alternative that even if he has a duty, he did not breach such a duty. However, as demonstrated above, plaintiffs have provided sufficient evidence for a reasonable jury to conclude that Breitmaier did not act reasonably in his approach to the Bailey home and subsequent firing of his weapon.

Breitmaier further argues that plaintiffs cannot establish proximate cause between his breach and their injuries. The jury must decide whether plaintiffs' specific injuries were foreseeable consequences from defendant's actions. *Goebel v. City of Santa Barbara,* 92 Cal.App.4th 549, 557, 111 Cal.Rptr.2d 901 (Cal.Ct.App.2001). Here, where plaintiffs have presented evidence that Breitmaier saw a young child and her mother before he fired his weapon, it is foreseeable that plaintiffs would be injured by Breitmaier's negligent actions. Thus, a reasonable jury could find that plaintiffs' injuries were foreseeable consequences of defendant's actions, and defendant's motion for summary judgment is denied.

### i. Whether Eddie Bailey Can Join Plaintiffs' Action for Negligence

■ Defendants argue that Eddie lacks standing to bring any claims against them because he was not present at the time of the incident, and thus did not suffer any injuries. In their opposition, plaintiffs only argue that Eddie brings claims under negligence and conversion. For this reason, defendants motion for summary judgment as to all other claims is granted with respect to Eddie.

Plaintiffs cite to *Bradford v. Edmands,* 215 Cal.App.2d 159, 30 Cal.Rptr. 185 (1963) in support of their claim that Eddie suffered damages because of defendants' negligence. Specifically, plaintiffs argue that Eddie has provided evidence that he had to take time off from work to care for his wife and daughter after the incident. *Bradford* does not support plaintiffs' position. In *Bradford,* a mother was entitled to damages for medical care she provided to her son who was injured by defendant's negligence. *Id.* at 168, 30 Cal.Rptr. 185. However, the court in *Bradford* distinguished between two types of care the mother offered: because the mother was a trained nurse, she was allowed to recover for the special nursing care and attendance she provided for her son, but could not recover for the care and attendance that she provided as a parent, under her duty to furnish to a minor child. *Id.; see also Laughner v. Bryne,* 18 Cal.App.4th 904, 910, 22 Cal.Rptr.2d 671 (Cal.Ct.App.1993). Nonetheless, the facts in *Bradford* are somewhat distinguishable in that the mother was not seeking recovery for loss of income, but rather only reimbursement for her services to her son. The question remains, therefore, as to whether Eddie can sustain a claim of negligence against

defendants for loss of income resulting from their negligence. Under these facts and the standard discussed above, Breitmaier, Moore, and the County did not owe Eddie a duty of care, largely because it was not foreseeable that those in Eddie's position would be harmed by defendants' conduct. Thus, defendants are entitled to summary judgment on Eddie's claim for negligence.[4]

### c. Negligent Infliction of Emotional Distress

■ Defendant moves for summary judgment on plaintiffs' negligent infliction of emotional distress claim arguing that Kari and Hayley were not aware of each other's injuries at the time those injuries were inflicted. To prove a claim for negligent infliction of emotional distress for injuries inflicted upon a third person, a plaintiff must satisfy a three part test: plaintiff "(1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress-a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." *Bird v. Saenz,* 28 Cal.4th 910, 915, 123 Cal.Rptr.2d 465, 51 P.3d 324 (2002) (internal quotation omitted). The only requirement at issue here is the second. In *Bird,* the California Supreme Court explained that the "requirement that the plaintiff be contemporaneously aware of the injury-producing event [does not require] visual perception of an impact on the victim[, but rather may be] perceived by other senses so long as the event is contemporaneously understood as caus-

ing injury to a close relative." *Id.* at 917, 123 Cal.Rptr.2d 465, 51 P.3d 324.

Here, plaintiffs have provided evidence that Kari and Hayley saw Breitmaier fire his gun in their direction, saw Breitmaier shoot their dog, and immediately perceived that they were struck by the bullet. However, plaintiffs have only provided evidence that Kari perceived that Hayley was simultaneously struck by the bullet. This evidence includes both Hayley's statements concerning being shot and Kari's statements that her daughter had been shot. There is no evidence to support that Hayley also perceived that her mother was hit by a fragment of the bullet. For these reasons, defendant's motion for summary judgment is granted as to Hayley's claim for negligent infliction of emotional distress, and denied as to Kari's claim.

### d. Intentional Infliction of Emotional Distress

■ Breitmaier also seeks summary judgment on plaintiffs' intentional infliction of emotional distress claim. To succeed on this claim, plaintiff must prove all three elements of the tort: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court,* 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (internal quotation omitted). To prove that defendant's conduct is "outrageous[, it] must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* Defendant only argues that plaintiffs cannot meet the first element of the claim.

4. The court notes that Eddie's care of Kari and Hayley may be relevant to the calculation of damages for Kari and Hayley. *See Seed-* *borg v. Lakewood Gardens Civic Ass'n,* 105 Cal.App.2d 449, 454, 233 P.2d 943 (Cal.Ct. App.1951).

Here, the facts in a light most favorable to plaintiffs are as follows: Breitmaier walked through plaintiffs' front yard in which he saw numerous children's toys. Breitmaier then approached plaintiffs' front door in violation of his direct orders and police procedure with his gun drawn. A five year old girl, Hayley, and her mother, Kari, approached the front door with their dog. Kari opened the door, while trying to prevent her dog from entering the yard. The dog escaped and headed toward the yard. Breitmaier saw both plaintiffs a couple feet behind the dog. Nonetheless, Breitmaier shot his gun at the dog. The bullet fragmented and ricocheted, and struck both Kari and Hayley.

Based on these facts, a reasonable jury could conclude that Breitmaier's conduct was extreme and outrageous in that he acted in "reckless disregard of the probability of causing [plaintiffs] emotional distress." Firing a gun in the direction of a small child and her unarmed mother could constitute behavior that exceeds all bounds usually tolerated in a civilized community. For these reasons, defendant's motion for summary judgment on plaintiffs' intentional infliction of emotional distress claim is denied.

### e. Conversion

 Plaintiffs bring a claim of conversion against defendant for shooting plaintiffs' dog, taking the injured dog to a veterinarian without plaintiffs' consent, and refusing to pay the bill for the veterinary care, which resulted in the veterinarian refusing to return plaintiffs's dog for several days while plaintiffs obtained a loan for said purpose. Defendant argues that Breitmaier cannot be liable for conversion because (1) Breitmaier lacked the intent to exercise ownership over plaintiffs' property and (2) Kari ratified the dog's veterinary treatment. Defendant also argues

that Eddie lacks standing to bring this claim.

 To prove conversion, a plaintiff must show: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (Cal.Ct.App.1998) (*citing Moore v. Regents of University of California* 51 Cal.3d 120, 271 Cal.Rptr. 146, 793 P.2d 479 (1990); other citation omitted.), *see also Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir.2008) (same). Contrary to defendant's position, "[c]onversion is a strict liability tort [whereby, t]he foundation of the action rests neither in the knowledge nor the intent of the defendant." *Burlesci*, 68 Cal.App.4th at 1066, 80 Cal.Rptr.2d 704. Specifically, a defendant can be liable for conversion even where he acted in good faith, lacked knowledge of the conversion, or lacked motive to commit the tort. *Id.* The case upon which defendant relies to support his contention that he cannot be liable for conversion because he did not intend to assert ownership over the dog is distinguishable. In *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 812, 26 Cal. Rptr.2d 391 (Cal.Ct.App.1994), the court held that conversion cannot occur accidentally. Rather, the court held, that conversion must be based on deliberate conduct. *Id.* at 814, 26 Cal.Rptr.2d 391. Defendant's conduct in taking the dog from its owners and bringing it to the veterinarian is clearly deliberate, and therefore can support a claim of conversion. Thus, defendant's first argument for summary judgment on this claim is rejected.

Defendant's second argument is that plaintiffs ratified the conversion of their dog. In *Bank of New York*, the Ninth Circuit considered a case where account

supervisors at plaintiff bank approved the transfer of payments by defendant even though the transfer required written approval from a government official, which it did not have. *Bank of New York*, 523 F.3d at 915. The court held that the plaintiff ratified the defendant's conversion of the funds because by approving the transactions it, "consent[ed] to the defendant's exercise of dominion." *Id.* Here, defendant seeks to make a similar argument that by allowing the officers to take the dog to the veterinarian, Kari ratified the conversion. While a reasonable interpretation of the facts, plaintiffs have demonstrated that a reasonable jury could also find that Kari did not ratify the conversion. Specifically, a jury could find that Breitmaier took the dog to the veterinarian without Kari's knowledge. Consequently, the jury could conclude that Kari in no way approved the actions of the defendant in taking possession of her property. The reasonable jury could conclude that Kari did not consent to Breitmaier's conversion of her dog.

Lastly, defendants present no support for their claim that an individual must be present at the time conversion is committed. Furthermore, the elements of conversion do not require presence. For this reason, Eddie has presented evidence sufficient to support his claim of conversion. Thus, defendant's motion for summary judgment as to plaintiffs' claim for conversion is denied.

### f. Violation of California Civil Code Section 52.1

█ Defendant argues that no evidence exists to support plaintiffs' claim for violation of Cal. Civ. Code § 52.1. This section provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with [by threats, intimidation, or coercion], may institute and prosecute ... a civil action for damages." Cal. Civ. Code. § 52.1(a-b). While initially considered to only apply to crimes motivated by discriminatory animus or intent, the California Supreme Court has subsequently broadened its coverage to include any unconstitutional acts or acts contrary to statutory law "so long as those acts were accompanied by the requisite threats, intimidation, or coercion." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843, 11 Cal.Rptr.3d 692, 87 P.3d 1 (2004). Specifically, in *Venegas*, the California Supreme Court permitted a Section 52.1 claim to accompany a Section 1983 claim for an unreasonable detention, search, and seizure. *Id.* at 827, 11 Cal.Rptr.3d 692, 87 P.3d 1. Subsequently, California courts have held that Section 52.1 claims are viable when plaintiff has a claim for excessive force by a law enforcement officer. *See, e.g., Thompson v. County of Los Angeles*, 142 Cal.App.4th 154, 172–73, 47 Cal. Rptr.3d 702 (Cal.Ct.App.2006); *City of Simi Valley v. Superior Court*, 111 Cal. App.4th 1077, 1082–84, 4 Cal.Rptr.3d 468 (Cal.Ct.App.2003).

Consequently, the only colorable argument raised by defendant concerning this claim is whether Breitmaier's actions, considered in the light most favorable to plaintiff, constitute "threats, intimidation, or coercion." As discussed above, plaintiffs have stated a claim that their Fourth Amendment and Due Process rights were violated by defendant. There is no evidence that defendant threatened or coerced plaintiffs. There is, however, a question of fact as to whether defendant intimidated plaintiffs. Specifically, plaintiffs have provided evidence that defendant's actions in approaching plaintiffs' front door with his gun drawn and his

eventual shooting of plaintiffs' dog while Kari and Hayley were in the line of fire and only a couple feet from the dog could constitute intimidating behavior affecting the exercise of plaintiffs' constitutional rights. Thus, defendants motion for summary judgment as to plaintiff's Section 52.1 claim is denied.

### B. Claims Against County of San Joaquin and Moore

#### 1. Section 1983

##### a. County of San Joaquin

 The County of San Joaquin ("County") argues that plaintiffs have not provided evidence to support their claim that their injuries were caused by an official government policy or custom under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendant only presents evidence that its written policies concerning the use of force fail to give rise to a *Monell* claim. Plaintiffs, however, present two unwritten policies to support their claim against the County. Specifically, plaintiffs argue that the County has "(1) a policy and practice of solely relying on other agencies to provide accurate addresses without having a system in place to verify the address accuracy; and . . . (2) a policy and practice of not conducting a visual inspection of the property prior to deploying . . . the Community Resource Team." Plaintiffs' Opposition at 27. Plaintiffs contend that but for these policies, Breitmaier would never have approached their front door and fired his gun in the direction of their home, which ultimately caused plaintiffs' injuries. Plaintiffs fail to provide any citations to the record to support the existence of these policies. It appears to the court that plaintiffs seek to include testimony of Steve Moore and William Mitchell to support their claim of a department-wide policy or procedure. Specifically, in plaintiffs'

statement of additional material facts, they refer to the following facts:

1. The County does not require, nor is it customary for SAFE officers to ever, conduct any visual verification of the residences on their list prior to their arrival and deployment. Dep. of Mitchell at 31:7–13; Dep. of Moore at 23:24–24:3.

2. The County does not require the sergeant to inform the deputy sheriffs of any protocols or other information before arriving at the property. Dep. of Moore at 28:1–5.

3. The County does not require, nor is it customary for SAFE officers to ever, verify the information it receives from other agencies when conducting a code enforcement. Dep. of Moore at 45:21–46:2.

Based on this evidence, a reasonable jury could find that the County does have the unwritten policies argued by plaintiffs, and that these policies are "a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996) (internal quotation omitted). Plaintiffs "must also show that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Id.* Cause in fact is easily demonstrated here where (1) if the SAFE team verified the address to determine that plaintiffs' home was not the home for which the code violation was issued, or (2) conducted a visual inspection prior to deployment and discovered that no transients were living in plaintiffs' backyard, the SAFE team would never have been deployed to plaintiffs' home and, therefore, plaintiffs never would have been injured. The issue, then, is whether these policies and procedures are the proximate cause of plaintiffs' constitutional injuries. As discussed above, proxi-

mate cause is a question of foreseeability, specifically whether the injuries sustained by plaintiffs are the foreseeable consequences of the policies. Here, foreseeable consequences of the policies identified by plaintiffs are that the SAFE team will be deployed to the wrong house, not that a deployed officer will disregard police protocol and the specific instructions of his supervisor and approach the front door of a house alone with his gun drawn. The only way that these policies would constitute the proximate cause for plaintiffs' injuries is for the court to assume that police officers always or often use excessive force or disobey orders and protocols. Because the policies identified by plaintiffs are not the proximate cause of plaintiffs' injuries, the County's motion for summary judgment on plaintiffs' § 1983 claim is granted.

### b. Sheriff Steve Moore

 Sheriff Steve Moore ("Moore") is Breitmaier's supervisor, and was not directly involved in the Breitmaier's approach of plaintiffs' home and resulting firing of his weapon. Moore moves for summary judgment on the § 1983 claim against him on the grounds that there is no evidence that Moore ratified Breitmaier's actions. Plaintiffs argue that Moore is liable under § 1983 for providing inadequate training. Inadequate training can support a § 1983 claim, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Consequently, Moore can only be liable under § 1983 when his failure to train "reflects a 'deliberate' or 'conscious' choice." *Id.* at 389, 109 S.Ct. 1197. Here, plaintiffs argue that Moore provided inadequate training as to the need to verify information in complaints provided by other agencies. As described above, verification of infor-

mation is not a proximate cause of the constitutional injuries sustained by plaintiffs. Thus, even if plaintiffs had provided evidence that Moore deliberately failed to train his officers as to the verification of information before deployment, such a failure cannot support § 1983 liability under *Monell.* Thus, Moore's motion for summary judgment on plaintiffs' § 1983 claim is granted.

### 2. Negligent Supervision

While plaintiffs' complaint alleged negligent hiring, retention, training, supervision, and discipline, plaintiff only opposes defendants' motion for summary judgment based on negligent supervision. For this reason, the court assumes that summary judgment on the other forms of negligence is unopposed by plaintiffs, and summary judgment is granted as to those forms.

In order to prove negligent supervision, a plaintiff must prove "knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of America, Inc.,* 81 Cal.App.4th 377, 395, 97 Cal.Rptr.2d 12 (Cal.Ct.App.2000). Here, plaintiffs have provided evidence that Breitmaier was only infrequently a member of the SAFE team, and was not provided adequate instructions prior to and when the team arrived at plaintiffs' house. Furthermore, plaintiffs have provided expert testimony that the failure to provide Breitmaier with guidance and information constituted inadequate supervision of a police officer. The County's and Moore's inadequate supervision of Breitmaier was both the cause in fact and proximate cause of plaintiffs' injuries. Thus, defendants' motion for summary judgment on plaintiffs' negligent supervision claim is denied, but is granted as to plaintiffs' claims for negligent hiring, retention, training, and discipline.

### 3. Respondeat Superior for State Law Claims

Defendant County does not move for summary judgment on plaintiffs' state law claims. Plaintiffs nonetheless argue that these County is liable for these claims under *Robinson v. Solano County,* 278 F.3d 1007, 1016 (9th Cir.2002). Because County does not move for summary judgment on these claims, the court does not consider plaintiffs' argument concerning County's liability.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS IN PART Defendants' motion for summary judgment, Doc. No. 25.

The court DENIES summary judgment for Eddie Bailey's claim for conversion against all defendants, and GRANTS summary judgment for all other claims brought by Eddie Bailey.

The court DENIES summary judgment for Kari and Hayley Bailey's claims against Terry Breitmaier for violation of § 1983 with respect the recovery under theories of Excessive Force and Due Process, and GRANTS summary judgment for violation of § 1983 under the theory of violation of the Eighth Amendment.

The court GRANTS summary judgment for Kari and Hayley Bailey's claims against the County of San Joaquin and Steve Moore for violation of § 1983.

The court GRANTS summary judgment for Kari and Hayley Bailey's claims against all defendants for violations of §§ 1985 and 1986.

The court DENIES summary judgment for all defendants for the following claims brought by Kari and Hayley Bailey:

(1) Assault and Battery;

(2) Negligence;

(3) Intentional Infliction of Emotional Distress;

(4) Conversion; and

(5) Violation of Cal. Civ.Code § 52.1.

The court DENIES summary judgment for Kari and Hayley Bailey's claims of Negligent Supervision against the County of San Joaquin and Steve Moore, and GRANTS summary judgment for Kari and Hayley Bailey's claims of negligent hiring, retention, training, and discipline against the County of San Joaquin and Steve Moore.

The court DENIES summary judgment for Kari Bailey's claim of Negligent Infliction of Emotional Distress against all defendants, and GRANTS summary judgment for Hayley Bailey's claim of negligent infliction of emotional distress against all defendants.

IT IS SO ORDERED.